CHARLES GRAY AND ELLA GRAY, PLAINTIFFS, v. MARGARET ELMO, DEFENDANT.

Decided October 27, 1931.

For the rule, *Cole & Cole.*

*Contra, James Mercer Davis.*

SOOY, J. A careful reading of the evidence discloses that the plaintiff, Mr. Gray, while driving his motorcycle toward Atlantic City and nearing Kentucky avenue, was suddenly confronted with the necessity for quick action in order to prevent a collision with another automobile which suddenly came into plaintiff's line or path of travel; that Mr. Gray, in that situation, applied his brakes, turned (first) to the left and in a very brief space of time collided with defendant's automobile.

Taking the evidence as a whole and viewing Mr. Gray's control and management of his motorcycle, under the circumstances with which he was confronted, I think that the jury's

finding in his favor on the charge of contributory negligence may not be disturbed. There is a conflict of testimony as to his rate of speed and as to what lane of traffic he was traveling in but the evidence as to what caused him to swerve from his course is undisputed (another car). Whether this "other car" was defendant's automobile is another question. Certainly the evidence would not justify the court in holding plaintiff guilty of contributory negligence as a matter of law.

The question as to whether or not the defendant was guilty of the alleged negligence and whether her negligence was the proximate cause of the collision is the one with which the court must deal on this rule.

The alleged negligence was—

"The negligence of which the plaintiffs complain and of which the defendant is guilty consists in the fact that the said automobile of the defendant was operated recklessly and carelessly and without regard for other persons on the road; that she did not give any warning of the stopping of her automobile in the middle of the roadway of Absecon Boulevard; that she did not accord plaintiffs the right of way to which they were entitled," &c.

If the collision happened as related by defendant's witnesses the verdict may not stand because it is quite evident that the "other or green car" was the offender and that defendant's car being at a standstill, and having so been for a period of from two to five minutes, did nothing that in any way caused the collision which admittedly ensued.

If the collision happened as plaintiff says it did the jury was justified in finding that defendant's auto caused the collision in failing to yield to plaintiff the right of way to which he was entitled under the circumstances as related by plaintiff. In other words, the allegation of negligence would support the verdict if the jury was justified, under the evidence, in finding that plaintiffs' evidence supported the burden of proof.

I have carefully reviewed the evidence and have before me a mental picture of the blackboard drawing used at the trial and will not lengthen this opinion by recitals thereof.

A significant thing presents itself to me, as it probably did to the jury. Mr. Marino says that the skid marks left by the motorcycle were about sixty-five feet. Mr. McLees says about thirty feet. All of the witnesses for plaintiffs and the defense say that the motorcycle either swerved or skidded. All say that the first swerve was to the left and yet neither of these two witnesses (Marino and McLees) nor anyone else described the course of the skid marks. Plaintiffs were in no position or condition, after the accident, to make any observations as to these marks. The defendant produced McLees and Marino. If the collision happened when defendant's car was standing on the gravel, near the cement, the motorcycle, after its first swerve to the left, must have skidded in the opposite direction over to defendant's car and these skid marks would have been evidence of the course of the motorcycle during the skid.

The skid mark, as testified to, if sixty-five feet, might tend to corroborate the testimony as to excessive speed of the motorcycle; if only thirty feet, otherwise. This situation arising out of the evidence and lack of evidence was for the jury. The probabilities were for the jury.

All of defendant's witnesses have placed defendant's automobile off the hard surface. All of them place plaintiff's position on the road in a different lane of traffic than that which he says he was using and yet all of the witnesses say that plaintiff had to swerve to the left to avoid the "other or green car." If plaintiff did so swerve, as all agree he did, he must have gone either over or near the center line of the highway, and to get back into contact with the Lincoln car he had to skid in the opposite direction from his swerve. Is this probable? It was for the jury to say.

All of the witnesses seem to agree that the motorcycle, after the collision, was in the second lane of traffic—a circumstance of little value, maybe—and yet one that played some part in determining the probability of the collision having taken place as plaintiff says or as defendant says it happened, especially, in view of the evidence of the damage done to the Lincoln—a little paint and a little scratch on its bumper.

Another circumstance with which the jury had to deal was the variance in the testimony of defendant's witnesses as to what part the "green car" played in the accident, *i. e.*, what it did and what its position was in the road just prior to the collision and what happened to it afterward.

Mrs. Elmo does not know what happened to it. Mrs. Kelley and Mr. Hermiston do not know. Marino says it passed his car. Another witness, that it parked at the armory. All these witnesses differ widely as to the position of this automobile on the road, *i. e.*, whether it was on the gravel or the cement, &c.

Mr. Hermiston puts the green car and possibly other cars in such position on the road that, he says, prevented Marino from seeing what was coming. He says that he did not see the motorcycle coming, page 146, and yet, on page 144, he says "the motorcycle came down there and swerved, skidded and struck the bumper," &c.

Mr. Kelley says that he "cautioned the chauffeur." Saw the motorcycle seventy-five yards away, coming forty-five or fifty miles per hour. He says that nothing obstructed his vision or that of his driver.

Mr. Marino described the action of the green car and when he testified that it passed him just before the accident, he created a situation that confronted the jury as to just how this could be and the accident happen as defendant contends it happened.

If the number of witnesses controlled, the rule should be made absolute, but that is not the test and I must say that a reading of the evidence, a fair consideration of the probabilities and the inferences which may be drawn from the testimony, taken as a whole, create in my mind a factual question that I might, as a juror, have considerable trouble in deciding—but—considering the verdict of the jury on the evidence presented and taking into consideration the fair inferences and probabilities arising from the evidence, I am unable to say that the verdict manifests any prejudice, passion or mistake.

I remember, clearly, that Mrs. Young made a mark on the blackboard and that the mark she made placed defendant's car off the cement—but, a reading of her testimony makes the mark so made of little value and I frankly confess that had I been a juror her marking, in view of her testimony, would have had no weight.

It is argued that the jury was mistaken as to their award of damages to the wife. Counsel for plaintiff admits the verdict in her favor is too high and consented in open court to a reduction thereof. I think it too high and will reduce it but the mere fact that it was high may not be urged in support of the argument that the finding of negligence on the part of the defendant was contrary to the weight of evidence.

The rule will be discharged as to the plaintiff, Charles Gray, and be made absolute, on the question of damages only, unless the plaintiff, Mrs. Gray, will consent to accept $350 as her award for the injuries sustained by her.